**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

BENTON V. HUBBLE,                          )
                                           )
                          Plaintiff,       )
            vs.                            )            1:04-cv-967-SEB-JPG
                                           )
DENNIS RICE, Sheriff of Montgomery         )
 County, et al.,                           )
                                           )
                          Defendants.  )


**Entry Discussing Motions for Summary Judgment**

For the reasons explained in this Entry, the motions for summary judgment filed following the Entry of November 8, 2005, denying any earlier such motion must be **granted.**

**I. Background**

**A.  Parties and Claims**

The plaintiff in this action is Benton Hubble ("Hubble"). The defendants are 1) Indiana State Trooper Matthew Voorhees, 2) Montgomery County Sheriff Dennis Rice, and 3) Deputy Montgomery County Sheriff Jake Watson. Trooper Voorhees is sued in his individual capacity only, whereas defendants Rice and Watson are sued in both their individual and their official capacities.

Hubble's lawsuit is based on two theories. He first asserts that defendants violated 42 U.S.C. § 1983 by stopping his vehicle without probable cause, in violation of his Constitutional rights under the Fourth, Fifth, and Fourteenth Amendments. Second, he maintains that the defendants violated 42 U.S.C. § 1985 by conspiring to detain him (and others) based on their political affiliation, thereby denying their Constitutional right to equal protection under the laws. Hubble alleges that he was stopped by Trooper Voorhees, without probable cause, at the direction of Sheriff Rice.

**B.  Summary Judgment Standard**

A court will grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting **FED.R.CIV.P.** 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

The Supreme Court has explained that the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990). The means by which this purpose is accomplished is by "pierc[ing] the pleadings and . . . assess[ing] the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith  Radio Corp.,* 475 U.S. 574, 587 (1986).

> At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried.  If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly.

*Thompson Everett, Inc. v. National Cable Advertising, L.P.* 57 F.3d 1317, 1323 (4th Cir. 1995). Succinctly stated, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S. Ct. 1584, 1598 (1998).

The methodology for acting on a motion for summary judgment has been set forth in the following terms:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each.  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); id. at 325, 106 S. Ct. at 2554 ("the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case").  Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial.  *Id.* at 324, 106 S. Ct. at 2553.  The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue.  *Id.*  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

2

*Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002)(internal quotation and citation omitted). The evidentiary standard to which this statement alludes clear: in particular, assertions based on speculation or conjecture do not withstand summary judgment. *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir.), *cert. denied,* 528 U.S. 986 (1999). The same is true of evidentiary material setting forth legal conclusions or conclusory statements, because legal arguments and conclusions are not "facts to which an affiant is competent to testify, [and] legal argument in an affidavit may be disregarded." *Pfeil v. Rogers,* 757 F.2d 850, 862 (7th Cir. 1985), *cert. denied*, 475 U.S. 1107 (1986). "Memorializing mere speculation in the form of an affidavit does not convert the speculation into competent evidence," *Gonzalez v. Litscher,* 230 F.Supp.2d 950, 962 (W.D.Wis. 2002), for "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990).

### C.  Prior Summary Judgment Ruling

The defendants' initial motion for summary judgment was addressed in an Entry issued some months ago. *Hubble v. Rice,* 2005 WL 3003092 (S.D.Ind. November 8, 2005). In that ruling, the court rejected two theories of defense advanced by the defendants. The first of these was that the claims presented by Hubble were barred by the doctrine of *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364 (1994), and the second of these was that Hubble's guilty plea barred some or all of the present claims through the doctrine of collateral estoppel. In examining the circumstances surrounding the matter, the court concluded that "neither the *Heck* doctrine nor collateral estoppel foreclose[s]" a determination that probable cause was lacking when Hubble's car was pulled over prior to his arrest. The questions now squarely before the court through the present motions for summary judgment are (1) whether there was probable cause to pull Hubble's car over and for his subsequent arrest, and (2) whether a viable claim can be asserted pursuant to 42 U.S.C. § 1985 based on Hubble's allegation that the defendants conspired against him on the basis of his political affiliation.

### D.  Undisputed Facts

The undisputed facts for the purpose of resolving the motions for summary judgment are the following:[1]

---

[1]The court has recited the facts which are material and which are supported by competent evidence. The court has disregarded evidentiary materials not meeting the standard of Rule 56(e) of the *Federal Rules of Civil Procedure. See Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003) "[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law.") (citing cases).

1.      At all times relevant to the events underlying Hubble's claims, Trooper Matthew Voorhees was a Trooper with the Indiana State Police and was assigned to patrol an area that included Montgomery County, Indiana. Also at the times relevant to the events underlying Hubble's claims, defendant Rice was the Sheriff of Montgomery County and defendant Jake Watson was a Deputy Sheriff of Montgomery County.

2.      The primary election for candidates for local offices in the State of Indiana was held on May 7, 2002. Sheriff Rice was running for the nomination of his party, as was Luther Blanton, an officer with the Montgomery County Police Department. In 2002, Hubble supported Luther Blanton in that primary election. Hubble placed Blanton signs in his yard and in his car. Mike West, the owner of the Waveland Pub in Waveland, Indiana, also supported Blanton's nomination, and hosted a party for Blanton on primary election day. The Waveland Pub ("the Pub"), which was closed during election hours pursuant to Indiana law, did not host the party, but rather, the party was held on the property next door to the Pub.

3.      As Deputy Sheriff Watson came on duty about 2:00 p.m. on May 7, 2002, he noticed the party, seemingly being held at the Pub. He observed several cars in the Pub parking lot and several Luther Blanton for Sheriff signs in the front yard. When Watson arrived at the Sheriff's office in Crawfordsville, he told the people in the squad room that there was a party for Blanton being held at the Waveland Pub. Sheriff Rice then contacted the Indiana State Excise Police to report an alleged violation at the Pub. During the party, sheriff's deputies sat at the gas station across the street watching the Pub. Roger Hubble, the son of Benton V. Hubble, attended the party for Blanton in Waveland and drove his father's car, a green Lincoln Towncar. During the party, the Towncar was parked on the street, at the side of the Pub. At around 3:00 p.m., Roger Hubble drove the green Towncar to his father's house and left it there. Otenburg gave Roger Hubble a ride back to the party.

4.      Benton V. Hubble did not go to the political party held next door to the Pub that day. Later that evening, being curious about the election returns, he drove to Crawfordsville in his Towncar and went to the American Legion. At the Legion, he had two beers.  When Hubble failed to find out any election information at the Legion, he left and went to the VFW in Crawfordsville. After going to the VFW, Hubble went to the grocery store. At approximately 11:30 p.m., he began driving back to Waveland on State Road 47.

5.      On that same evening, at approximately 11:28 p.m., Trooper Voorhees was traveling northbound on State Road 47 as part of his routine patrol when he observed a dark vehicle that was traveling southbound from the Crawfordsville area and appeared to be traveling in excess of the posted speed limit. Voorhees verified the speed of the vehicle to be in excess of the posted 55 mph speed limit. He then turned his vehicle around in pursuit of the speeding vehicle and activated his emergency lights.

6.      The dark vehicle traveling southbound from the Crawfordsville area which Trooper Voorhees noted traveling in excess of the posted speed limit was Hubble's Towncar, being driven by Hubble. After making a wide right turn (left of center), the vehicle came to a stop on State Road 234.

4

7.      As Trooper Voorhees approached the vehicle, Hubble rolled down his window. At this time Voorhees noticed a very strong smell of alcohol coming from the vehicle. Voorhees administered four field sobriety tests, of which Hubble failed three.[2] Hubble was arrested by Voorhees at that point.

8.      After Voorhees stopped Hubble, a sheriff's car pulled up beside the trooper's car. Then, Voorhees took Hubble to the Montgomery County Jail. At the Jail, Hubble refused to take a certified alcohol test. Hubble later pled guilty to operating a vehicle while intoxicated.

9.      Deputy Watson worked on May 7, 2002, until his shift ended at 10:30 p.m. He then went home, changed clothes, and drove back toward the Sheriff's Department in Crawfordsville in his patrol car. While driving north on State Road 47, Watson noticed a car driving southbound (toward Watson's car) at a high rate of speed. He turn on his radar, which indicated that the southbound car was traveling in excess of the posted 55 mph speed limit. Deputy Watson did not at that time identify the speeding car as Hubble's green Towncar or as an automobile which had been parked at the Pub earlier in the afternoon of that day and did not identify Hubble as the driver of the speeding car. Deputy Watson radioed Trooper Voorhees about the speeding vehicle, whereupon Voorhees told Watson that he (Voorhees) was turning around to pursue the speeding vehicle. A short time thereafter Deputy Watson observed Trooper Voorhees' car pass Watson's car. Deputy Watson continued north to Crawfordsville. He remained off duty and took no part in the stop of the green Towncar or in Hubble's arrest. Deputy Watson did not receive or hear about any order or direction to conduct heightened surveillance of the Pub that day or to target individuals who had been at the Pub or at the party for candidate Luther Blanton for increased traffic violation enforcement.

## II.  Discussion

Hubble's claims are asserted pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Subject matter jurisdiction over these claims is conferred by 28 U.S.C. § 1331.

### A.  Probable Cause - The Seizure and The Arrest

To state a claim under § 1983, a plaintiff must allege (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 112 S. Ct. 1827, 1830 (1992).

---

[2]This "fact" is not objectionable hearsay because it is offered by Voorhees to simply describe the basis for proceeding with his arrest of Hubble; this "fact" is not offered for the truth of the proposition that Hubble was intoxicated. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial").

The Fourth Amendment protects against unreasonable searches and seizures. "Reasonableness" under the Fourth Amendment, and thus, the constitutionality of a warrantless arrest, requires the existence of probable cause to make an arrest. "A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim." *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir. 1990). Conversely, police may make warrantless arrests based on probable cause. *United States v. Watson,* 423 U.S. 411, 418 (1976).

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 125 S. Ct. 588, 593 (2004) (citations omitted). A law enforcement officer has probable cause to arrest a suspect "when the totality of the facts and circumstances within his knowledge and of which he has reasonably trustworthy information is sufficient to warrant a prudent person in believing the suspect committed or was committing an offense." *Marshall v. Teske,* 284 F.3d 765, 770 (7th Cir. 2002). "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'" *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (quoting *United States v. Carrillo*, 269 F.3d 761, 766 (7th Cir. 2001)).

Trooper Voorhees' observation of the green Towncar during the late evening of May 7, 2002, indicated that the Towncar was exceeding the posted speed limit. This violated a traffic law, IND. CODE § 9-21-5-2, which in turn justified the initial stop of the vehicle. *Whren v. United States,* 517 U.S. 806, 810 (1996) (decision to stop and detain motorists is reasonable where there is probable cause to believe that a traffic violation has occurred). The subjective intentions of the officer play no role in determining the reasonableness of the stop under the Fourth Amendment. *Id.* at 813. The strong smell of alcohol from inside the vehicle justified the use of the chemical breath test, and the results of that test justified the arrest of Hubble for driving while intoxicated. *State v. Russ,* 480 N.E.2d 248, 249 (Ind.Ct.App. 1985). IND. CODE § 35-33-1-1("A law enforcement officer may arrest a person when: . . .  (4) He has probable cause to believe the person is committing or attempting to commit a misdemeanor in his presence.").

"It is  well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Juriss v. McGowan,* 957 F.2d 345, 349 n.1 (7th Cir. 1992) (citing *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir. 1989)). It is indisputable in this case that there was probable cause for Benton's arrest.

Hubble's claim under the Fourth Amendment thus fails. He attempts to stack other constitutional violations onto this same event, but the effort is misguided for two reasons. *First,* the Fourth Amendment is the exclusive constitutional provision which governs any claim Hubble may have associated with the traffic stop which has been described and with his arrest. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of

6

government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim.") (plurality opinion of Rehnquist, C.J.) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989)). "All claims for unreasonable search and seizure must be analyzed under the Fourth Amendment." *Davis v. Novy,* 2003 WL 1964200, \*2 (N.D.Ill. April 23, 2003) (citing *Graham,* 490 U.S. at 395). *Second,* there is no merit to a claim under any of the other constitutional provisions Hubble cites. Thus, any claim asserted pursuant to the Fifth Amendment is dismissed because only state action, not action by the federal government, is alleged here. *Jackson v. Byrne*, 738 F.2d 1443, 1446 (7th Cir. 1984). Contrary to Hubble's assertion, moreover, even the conduct he attributes to the defendants does not "shock the conscience," such as would be required to support a substantive due process claim, *Tun v. Whitticker,* 398 F.3d 899, 902 (7th Cir. 2005), and the facts of this case do not support an equal protection claim, for which it is required that the claimant show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. *Herro v. City of Milwaukee,* 44 F.3d 550, 552 (7th Cir. 1995).

Defendants Rice and Watson are sued, *inter alia*, in their official capacities. This represents a claim against the municipality of which they are agents, *i.e.,* the office of the Montgomery County Sheriff. *Baxter v. Vigo County School Corporation,* 26 F.3d 728, 733 n.4 (7th Cir. 1994) ("Therefore, a suit against such an official amounts to a suit against the entity of which he is an official.")(citing *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985)). Claims against a municipal defendant are cognizable under 42 U.S.C. § 1983 only when its official policies or customs cause its employees to violate another's constitutional rights. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 691 (1978). However, because neither Sheriff Rice nor Deputy Sheriff Watson violated Hubble's constitutional rights in connection with the events of May 7, 2002, the Sheriff's Department of Montgomery County cannot be held liable in this case. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir.) ("it is well established in this Circuit that a municipality's liability for a constitutional injury requires a finding that the individual officer[ ] [is] liable on the underlying substantive claim"), *cert. denied*, 531 U.S. 957 (2000).

### B. Conspiracy - Political Affiliation

Hubble contends that Sheriff Rice conspired with Deputy Watson and other law enforcement officers for the purpose of punishing those who supported his political rival and depriving those persons believed to have been at Blanton's party on May 7, 2002, of equal protection of the law. Rice's directive, Watson's identification and report, and Voorhees' stopping Hubble without reasonable suspicion or probable cause were acts in furtherance of the conspiracy. This conspiracy claim is asserted pursuant to 42 U.S.C. § 1985(3), which confers a private right of action for injuries occasioned when "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ."

7

Plaintiff's conspiracy claim must be dismissed for at least two reasons. First, neither the Supreme Court or the Seventh Circuit has ever held that nonracial conspiracies motivated by political loyalty are within the protection of section 1985(3). *See United Bhd. of Carpenters & Joiners of America, Local 610, AFL-CIO v. Scott,* 463 U.S. 825, 837 (1983) ("Even if the section must be construed to reach conspiracies aimed at any class or organization on account of its political views or activities, or at any of the classes posited by Senator Edmunds, we find no convincing support in the legislative history for the proposition that the provision was intended to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities."); *Grimes v. Smith,* 776 F.2d 1359, 1363-67 (7th Cir. 1985) (Section 1985(3) does not cover alleged victims of nonracial political conspiracies); *Bowman v. City of Franklin,* 980 F.2d 1104, 1109 (7th Cir. 1992) ("Even if the defendants' actions against the Bowmans could somehow be viewed as political, '§ 1985(3) does not reach nonracial political conspiracies,'")(quoting *Grimes*).

### III.  Conclusion

Summary judgment is, in a rough sense, "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). The defendants have shown that Hubble's federally secured rights were not violated in connection with the events of May 7, 2002.  Accordingly, the defendants' motions for summary judgment are **granted.** Judgment consistent with this Entry shall now issue. The settlement conference, final pretrial conference, and jury trial settings are each **vacated.**

   **IT IS SO ORDERED**.

Date: 08/29/2006

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana